# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : |
| | : CRIMINAL ACTION NO. |
| JAMES PETER ROBERTS, | : 2:09-CR-00033-RWS |
| | : |
| Defendant. | : |
| | : |

## **ORDER**

This case is before the Court for consideration of the Report and

Recommendation [45] of Magistrate Judge Susan S. Cole. After reviewing the

Report and Recommendation ("R&R") and the Objections [46] thereto, the

Court enters the following Order.

The Court adopts and incorporates herein the Procedural History

Findings of Fact, and Applicable Standards (R&R at 2-12) and Voluntariness of

Miranda Waiver (R&R at 16-19) sections in the Report and Recommendation.

However, the Court reaches a different conclusion when applying the applicable

standards to the facts of the instant case (R&R at 12-16). The question for

consideration is whether the statement by the Defendant that "he thought he

needed to talk to a lawyer," or "I think I need to talk with a lawyer" was an unequivocal invocation of Defendant's right to counsel. The undersigned concludes that it was.

Defendant's statement in the present case is nearly the same as the statement made by the defendant in Cannady v. Dugger, 931 F.2d 752, 755 (11th Cir. 1991). In Cannady, the Court held that "Cannady's statement, 'I think I should call my lawyer,' was an unequivocal request for counsel." This holding is discounted in the R&R because it predates Davis v. United States, 512 U.S. 452, 114 S. Ct. 2350, 129 L.Ed2d 362 (1994). However, Davis did not change the law relative to unequivocal invocations of the right to counsel.

In Davis, after being advised of his rights, the defendant waived his right to remain silent and to counsel and submitted to questioning. About an hour and a half into the interview, he said, "Maybe I should talk to a lawyer." Id. at 455. The interviewers then asked defendant questions to clarify his invocation of rights. After he stated that he was not asking for a lawyer, questioning continued. The question presented in Davis was whether the interviewers were

2

permitted to ask the defendant additional questions after he made an equivocal invocation of his right to counsel.[1]

Prior to Davis, some jurisdictions, including the Eleventh Circuit, required questioning to cease when an equivocal request for counsel was made but allowed questioners to ask narrow questions to clarify the statement and determine the suspect's desires regarding counsel. The Court in Davis noted that Miranda entitles a suspect to the assistance of counsel during a custodial interrogation and that Edwards requires that questioning cease if a suspect invokes the right to counsel. However, the Court removed the "third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue." Id. at 462 (emphasis in original). The Court did not alter in any way the holding "in Edwards that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present." Id.

---

[1] A second invocation of the right to counsel occurred in Davis that plays no part in the Court's holding. However, after the questioning continued for another hour, the defendant said, "I think I want a lawyer before I say anything else." Id. The interviewers apparently perceived that statement as an unequivocal invocation of the right to counsel and questioning ceased. Id.

3

Thus, Davis does not change the law relative to an unequivocal invocation of the right to counsel. Davis makes no pronouncement regarding the standard for determining whether an invocation of rights is equivocal or unequivocal. Rather, Davis simply removed any obligation to ask clarifying questions if the invocation is equivocal. This decision conflicts in no way with the Eleventh Circuit's determination that Cannady's invocation of rights was unequivocal.

While Davis did not change the law regarding unequivocal invocations of the right to counsel, the decision provides a helpful review of existing law. According to Davis, the standard to be applied in deciding whether a statement is equivocal is what "a reasonable officer in light of the circumstances would have understood." Id. at 459. Davis recognized that the requirement of "a clear assertion of the right to counsel might disadvantage some suspects who–because of fear, intimidation, lack of linguistic skills, or a variety of other reasons–will not clearly articulate their right to counsel although they actually want to have a lawyer present." Id. at 460. The Court held that the invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an

4

attorney." Id. at 459 (quoting McNeil v. Wisconsin, 501 U.S. 171,178, 111 S.Ct. 2204, 2209, 115 L. Ed. 2d 158 (1991)).

The Court recognizes that Agent Witrick's subjective belief about whether Defendant invoked his right to counsel is not determinative because "this is an objective inquiry." Id. at 459. However, under the facts of this case, the perceptions of the questioner are helpful in discerning whether Defendant was equivocal. The Court concludes that the manner in which the officer present at the scene reacted to the statement is credible evidence of the perception that a reasonable officer would have had at the scene. Agent Witrick read Defendant his rights from a Statement of Rights form. (T-12)[2]. After Agent Witrick read the rights, Defendant said "that he thought he needed to talk with a lawyer." Davis, 512 U.S. at 459. Agent Witrick then told Defendant "that's fine. . .I won't ask you anymore questions." Id. Agent Witrick testified that he "didn't even give him the form for him to read at that point because I assumed we were done." Id. at 14.[3] Under the circumstances of this case, the

---

[2] References to the Transcript [40] of the September 28, 2009 hearing will be "(T-[page number])."

[3] Like the agents in Davis, Agent Witrick took Defendant's statement as an unequivocal invocation of his right to counsel. See Davis, 512 U.S. at 455.

5

Court finds that a reasonable officer would have understood, as Agent Witrick apparently did, that Defendant was making an unequivocal invocation of his right to counsel. This conclusion is further supported by consideration of the alternative. If the statement made by Defendant, perceived by the questioning officer to be an unequivocal invocation of the right to counsel is found by a reviewing court in hindsight not to be an unequivocal invocation of the right to counsel, what must a suspect do to invoke the right? Davis considered "the need for effective law enforcement" as "the other side of the Miranda equation" which must be balanced. Id. at 461. To recognize the invocation of rights in the present case does not disturb that balance.

The Court acknowledges that other courts have reached a different conclusion regarding similar language. First, as to statements where a defendant states that he "might" want or need a lawyer, the Court agrees that such a statement is equivocal. However, when a defendant says he "thinks" he wants to talk to a lawyer the undersigned believes the totality of the circumstances of the statement should be considered to determine whether the statement is equivocal. The facts of the present case, considered in light of

6

Cannady, cause the Court to conclude that Defendant's statement was unequivocal.

Having decided that the invocation of the right to counsel was not equivocal does not end the inquiry. Even if a defendant invokes his right to counsel, further interrogation may occur if "the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 485, 101 S. Ct. 1880, 68 L.Ed2d 378 (1981). "A suspect initiates questioning if she evinces a willingness and a desire for a generalized discussion about the investigation." Jacobs v. Singletary, 952 F.2d 1282, 1294 (llth Cir. 1992). The Court finds that Defendant initiated further conversation with the agents.

After Defendant stated that he thought he needed to talk with a lawyer, the only questions asked by Agent Witrick were to confirm Defendant's date of birth and social security number. Witrick then explained to Defendant that he "want[ed] to give [Defendant] some background so when he did talk to a lawyer he could tell them it was something more than just a pornography investigation, he would have something to tell him." (Tr. 14; see also Tr. 32-33). Witrick also

7

told Defendant "that if at any time . . . while we were there during the search warrant if he wanted to talk to me, just let me know. Otherwise, we were going back out into the living room and . . . , he could sit out there with his wife and son." (T-12).

Defendant remained seated on the bed with his head facing the floor, and he "was kind of rocking back and forth and kept repeating he didn't know what to do." (T-14). Witrick described him as "very nervous," but he "never made any type of attempt or whatever to get off the bed and to walk out the door." (T-20). Witrick repeatedly told him, "[W]ell, leave . . . go out into the living room," but "he never made any movement to get off of the bed." (T-14). Defendant "then started asking [Witrick] questions as to what [he] wanted." Id. Witrick initially told Defendant that he "didn't understand what his question was," but then said, "You know, I would like your cooperation in this pornography investigation," and Witrick told Defendant that he "wanted to talk with him." (T-14-15, 33). Defendant kept repeating, "I don't know what to do," he told Witrick that he "had been up late the night before working,"[4] and he

---

[4] Witrick testified, "If he had not said anything to me, I wouldn't have known that he was tired." (T-35).

8

then said to Witrick, "You are going to arrest me." (T-15). Witrick replied, "No, you know, I don't have an arrest warrant for you." Id. Witrick also told Defendant, "[I]f you talk with me and so forth, I will advise the . . . U.S. Attorney's office of any cooperation, any statements that you make to me." (T-15; see also T-33-34).

Defendant "then stated that he would like to talk with [Witrick]." (T-15). Witrick responded, "Just so there is no misunderstanding, let me advise you of your rights again." Id. At 7:44 a.m., Witrick again read Defendant his rights and let him read the rights form. Id. Defendant appeared to read it, "and he then signed his name [at 7:46 a.m.] under the consent portion where he agreed to speak with [Witrick]." (T-15-16; see also Gov't Ex. 2). Witrick then proceeded to interview Defendant in the bedroom. (T-16). About twenty minutes into the interview, one of the other agents came to the room and informed Witrick that they had found pornography on one of the computers in the residence. (T-16-17). Witrick instructed the agents to "shut everything down, we're taking all the computers in the house, then." (T-17). The agents seized four laptop computers, three desktop computers and two external hard drives. (T-22).

9

Witrick resumed the interview, and he told Defendant that they had found pornography on one of the computers in the house. (T-17, 34-35). According to Witrick, Defendant made incriminating statements during the interview, which lasted approximately 45 minutes. (T-17-18).[5]

During the interview of Defendant in the bedroom, the door to the bedroom was closed but not locked, and Defendant was not handcuffed or secured. (T-19). Defendant was cooperative, responded to Witrick's questions and "didn't act like he didn't understand anything." (T-20). He did not appear to be under the influence of alcohol "or anything else[.]" Id. Witrick made no promises to him; "the only thing" Witrick told him was that he "would advise the United States Attorney's office of any statements, any cooperation that he provided," but he did not tell Defendant, or imply, that "he would be better

---

[5] Witrick explained that after he interviewed Defendant, he took Defendant to the living room, and then he and other Task Force members advised Defendant's wife of her rights and interviewed her. (Tr. 19). Witrick noted on the advice of rights of rights form that he "advised her at 8:34 a.m."; based on that information, he estimated that the interview of Defendant lasted approximately 45 minutes. (Tr. 19).

10

off[.]" (T-20-21, 33-34).[6] Witrick did not threaten Defendant or take anything from him such as identification or keys. (T-21).

Defendant asserts that the officers engaged in coercive and deceptive tactics in order to obtain Defendant's statements and waiver of rights. The evidence does not support such a conclusion. Based on the foregoing facts, the Court concludes that the officers did not engage in inappropriate conduct, and Defendant initiated other communications with Agent Witrick about the alleged offense. Also, Agent Witrick advised Defendant of his rights a second time, and Defendant knowingly and voluntarily waived his rights. Therefore, Defendant's Motion to Suppress [25] is hereby **DENIED**.

**SO ORDERED** this ⎯19th⎯ day of February, 2010.

_____
**RICHARD W. STORY**
United States District Judge

---

[6] Witrick could not recall whether they discussed with Defendant other forms of cooperation, such as allowing the undercover agent to use his screen name. (Tr. 37).

11